IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GARY RADA,

Plaintiff,

v.

CITY OF TIGARD, an Oregon municipal corporation,

Defendant.

Case No. 3:26-cv-01214-AB

OPINION & ORDER

Kirk W. Mylander
MYLANDER LAW LLC
4800 Meadows Rd., Suite 300
Lake Oswego, OR 97035

Attorney for Plaintiff

Román D. Hernández
Jared M. Ahern
Olivia M. Loftin
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, OR 97201

Attorneys for Defendant

**BAGGIO, District Judge:**

Plaintiff Gary Rada brings this case against his former employer, Defendant City of Tigard. Compl., ECF No. 1. Plaintiff brings claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213; Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654; and related Oregon discrimination statutes. *Id.* Defendant now moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, arguing that Plaintiff's claims are within the sole jurisdiction of the Oregon Employment Relations Board (ERB). Def.'s Mot. Dismiss, ECF No. 7. Defendant also argues that Plaintiff's state law claims are untimely. *Id.* For the reasons that follow, the Court DENIES Defendant's motion.

## BACKGROUND

Plaintiff began working as a utility worker for Defendant's Public Works Department in June 2020. Compl. 3.[1] Defendant—as a public employer—is subject to Oregon's Public Employees Collective Bargaining Act (PECBA), Or. Rev. Stat. § (ORS) 243.650 *Id.* at 2; Hiatt Decl. ¶ 2, ECF No. 9. As an employee, Plaintiff was represented by SEIU Local 503/OPEU Local 199 (the "Union"), which has a collective bargaining agreement (CBA) with Defendant. *See* Hiatt Decl. ¶¶ 3–4, Ex. 1.

In 2022, Plaintiff was diagnosed with prostate cancer, which caused lasting medical complications. Compl. 3. Some of these complications were worse during full-duty field work. *Id.* at 3–4. Plaintiff alleges that when he returned to work after treatment, Defendant permanently "reassigned him to the most physically demanding and unsanitary work"—cleaning sewers. *Id.* at 4. Plaintiff was immunocompromised after his cancer treatment, and the sewer-cleaning

[1] Plaintiff does not use paragraph numbers in his Complaint. Citations therefore refer to page number.

assignment increased his infection risk. *Id.* Plaintiff alleges that Defendant knew of his medical issues, treatment, and limitations. *Id.* But when Plaintiff requested reassignment to less hazardous work, Defendant denied his requests and did not engage in any interactive process. *Id.*

By mid-October 2024, Plaintiff requested—and Defendant approved—protected medical leave while Plaintiff underwent additional cancer-related treatment. *Id.* And on December 30, 2024—after using ten weeks of leave—Plaintiff requested additional medical leave for continued treatment and recovery. *Id.* On that same date, and while Plaintiff "was still under active medical care," Plaintiff's supervisor emailed Plaintiff to inform him that he would need to return to work, retire, or resign by March 12, 2025. *Id.* at 4–5.

After Plaintiff's twelve weeks of protected leave ended, Plaintiff provided additional medical documentation to support a "finite additional leave period and return-to-work plan." *Id.* Defendant agreed to extend Plaintiff's medical leave beyond FMLA. *Id.* Plaintiff's return-to-work plan included temporary restrictions until he completed treatment and recovery. *Id.* For example, on April 24, 2025, Plaintiff's doctor provided documentation that Plaintiff could work with certain accommodations, such as bathroom breaks. *Id.* at 5–6. Plaintiff, however, alleges that Defendant proceeded towards administrative separation instead of engaging in the interactive process to accommodate Plaintiff until he had fully recovered. *Id.* at 5.

Plaintiff also alleges that Defendant discriminated against him because of his age. *Id.* at 7. Specifically, Plaintiff alleges that he "was subjected to repeated age-based comments and retirement-related assumptions by supervisors and coworkers." *Id.* Plaintiff's younger coworkers also allegedly mocked him because of his medical conditions. *Id.* Plaintiff alleges that consistent with this "workplace culture that viewed Plaintiff as an older worker to be pushed out, not

invested in," Plaintiff was denied training and opportunities in favor of younger employees. *Id.* at 8.

On June 5, 2025, Plaintiff again provided Defendant with "medical documentation supporting additional leave and a return-to-work plan with temporary restrictions." *Id.* Plaintiff sought additional leave through the end of 2025. *Id.* But on June 25, 2025, Defendant "issued a written notice proposing administrative separation and denying the requested additional leave." *Id*.

Pursuant to the CBA between Defendant and the Union, the Union filed and pursued a grievance challenging Defendant's decision on October 6, 2025. *Id.* at 9; Hiatt Decl. ¶ 6, Ex. 3. The parties proceeded through Step 3 of the grievance process between October and December 2025. Hiatt Decl. ¶¶ 7–9, Ex. 4. But Plaintiff alleges that "[r]ather than resolve the grievance or engage in an interactive process, the City continued down the path toward separation." Compl. 9. Plaintiff alleges that Defendant ultimately terminated Plaintiff's employment on September 18, 2025, while the grievance process was ongoing. *Id.*

Plaintiff filed a charge of discrimination with the Oregon Bureau of Labor and Industries and the Equal Employment Opportunity Commission and received a Notice of Right to File a Civil Suit dated June 10, 2026. *Id.* at 10. Plaintiff also sent Defendant a tort claim notice on February 4, 2026. Hiatt Decl. ¶ 11, Ex. 5. Plaintiff filed this case on June 16, 2026. *See generally* Compl. Plaintiff brings claims for: (1) disability discrimination and failure to accommodate under the ADA; (2) retaliation and interference under the ADA; (3) interference with Plaintiff's rights under the FMLA; (4) disability discrimination and failure to accommodate under ORS 659A.112; (5) retaliation and interference under ORS 659A.109; and (6) age discrimination under ORS 659A.030. Compl. 11–16.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts "presume[ ] that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citation omitted). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An "objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (internal citation omitted). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) attacks "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "In resolving a factual attack . . . , the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence

necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

## DISCUSSION

Defendant moves to dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1), arguing that the Oregon ERB "has exclusive jurisdiction over all of Plaintiff's claims." Def.'s Mot. Dismiss 1. Defendant also argues that Plaintiff's tort claim notice was untimely such that the Court also lacks jurisdiction over Plaintiff's state law claims. *Id.* The Court disagrees.

### I. ERB Jurisdiction

Defendant first moves to dismiss the Complaint by arguing that Plaintiff's claims are unfair labor practices under the CBA and therefore within the exclusive jurisdiction of the ERB, not the Court. Def.'s Mot. Dismiss 5. Specifically, Defendant argues "[a]lthough Plaintiff now casts his claims as state and federal statutory discrimination and retaliation claims, . . . the 'gravamen' of his complaint is still that [Defendant] has violated its CBA with the Union and committed [Unfair Labor Practices (ULPs)]." *Id.* at 9–10. In support of this argument, Defendant points to Plaintiff's grievance, in which the Union argued Defendant violated Articles 1, 3, 11, 16, and 21 of the CBA. *Id.* at 10 (citing Hiatt Decl. ¶ 6, Ex. 3).

Under the PECBA—which applies to disputes between public bodies and their employees—the ERB is vested with the exclusive jurisdiction "to investigate and decide whether any person has engaged in or is engaging in any unfair labor practice listed in ORS 243.672(1) and (2)." *Or. Sch. Emp. Ass'n, Chapter 89 v. Rainier Sch. Dist. No. 13*, 311 Or. 188, 194, 808 P.2d 83 (1991) (citation modified). But "[t]he ERB . . . does not have exclusive jurisdiction over all claims by employees against their employers." *Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cnty. Sch. Dist. No.* 9, 880 F.3d 1097, 1108 (9th Cir. 2018). Rather, the issue is whether

the "gravamen" of a plaintiff's claim is that the defendant has committed a ULP. *See Ahern v. Or. Pub. Emp.'s Union*, 329 Or. 428, 436, 988 P.2d 364 (1999) (holding a tort claim was within the jurisdiction of the ERB where the plaintiff alleged the defendant "intentionally interfered with his economic relations . . . by engaging in picketing activities in violation of ORS 243.672(2)(6)(g)"). Oregon appellate courts have held that statutory and common law claims are within the jurisdiction of the ERB where the claims either directly or indirectly allege a ULP or "depend[] . . . upon any determination of the sort to be made by ERB." *Black v. Coos Cnty*, 288 Or. App. 28, 35, 405 P.3d 178 (2017); *see also Shockey v. City of Portland*, 313 Or. 414, 418–21, 837 P.2d 505 (1992) (holding a common-law claim of wrongful discharge was not a potential ULP claim); *George-Buckley v. Medford Sch. Dist. 549C*, 318 Or. App. 821, 832–35, 509 P.3d 738 (2022) (finding a plaintiff's breach of contract claim was within the jurisdiction of the ERB where the plaintiff alleged that the defendants breached a collective bargaining agreement when "she was given the duties of a teacher although 'she was improperly classified as an Educational Assistant'").

In a recent case from this district, the court determined the plaintiff's state and federal claims were not within the exclusive jurisdiction of the ERB. *Puccio v. Or. Cascades W. Council of Gov'ts*, Case No. 6:25-cv-000115-MTK, 2025 WL 2829559 (D. Or. Oct. 6, 2025). There, the plaintiff brought claims for violations of the Oregon Rehabilitation Act, the Oregon Family Leave Act, the ADA, the FMLA, and for wrongful discharge. *Id.* at *1. The district court looked to the elements of the plaintiff's claims as well as the factual allegations in her complaint and concluded that they "[did] not rest on an unfair labor practice or any provision of the CBA." *Id.* at *3–4. In its analysis, the court emphasized that the plaintiff's claims did not "rely on any finding to be made by ERB," "rest on any challenge under the CBA," or "hinge on a

determination to be made by the ERB." *Id.* at *4. Looking at the collective bargaining agreement at issue there, the court further concluded that the plaintiff's claims did not implicate any provisions of the agreement, which did not "reference discrimination or retaliation." *Id.* The district court held that the ERB did not have exclusive jurisdiction: the plaintiff's "claims [did] not depend, as a predicate or in their entirety, on any determination to be made by ERB." *Id.*

This case is like *Puccio*. Here, Plaintiff brings claims under the ADA, the FMLA, ORS 659A.112(1), ORS 659A.109, and ORS 659A.030(1). Defendant's alleged violation of these statutes does not depend on any interpretation of the CBA or findings to be made by the ERB. Rather, Plaintiff's claims are entirely dependent on Plaintiff's rights under each of these statutes. *See, e.g.*, *Mayo v. PCC Structurals*, 795 F.3d 941, 944 (9th Cir. 2015) ("To prevail on an ADA claim of unlawful discharge, the plaintiff must establish a prima facie case by showing that: (1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability."); *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (holding that to prevail on a claim for FMLA interference, "the employee must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled"). And Plaintiff does not allege that a ULP or breach of the CBA is at the core of any of these claims. *See generally* Compl.; *see also Eagle Point*, 880 F.3d at 1108 ("Plaintiffs' allegation[s] . . . do[] not require determining whether an unfair labor practice occurred.").

Nor do Plaintiff's claims implicate any provision of the CBA. Indeed, the sole reference to discrimination or retaliation in the CBA provides:

> Non-Discrimination: This Agreement shall be applied equally to all employees represented by the Union without unlawful discrimination for any reason. The Union shall share equally the responsibility for applying the provisions of this paragraph. Inasmuch as both State and Federal law include mechanisms for the resolution of discrimination issues, the Union and the City agree that the provisions of this Section shall be used as the basis for a Step 1 through Step 3 grievance but shall not be pursued to Step 4 - Arbitration, or otherwise cited as the basis for a claim of a violation of this Agreement.

Hiatt Decl. Ex. 1, Art. 1, § 2. This general anti-discrimination provision does not render every allegation of discrimination into a breach of contract claim. Indeed, this section specifically differentiates between statutory discrimination claims and breach of contract claims in stating that violations of state and federal discrimination claims "*shall not be* . . . cited as the basis for a claim of violation of this Agreement." *Id.* (emphasis added).

Defendant's focus on the underlying grievance does not change the analysis. Defendant argues that Plaintiff's citations to the CBA in his grievance demonstrate that Plaintiff's statutory claims are actually claims for breach of the CBA, which is a ULP under ORS 243.672(1).[2] But, as the district court noted in *Puccio*, "[t]opical similarity with a CBA . . . is distinct from structural or factual dependence on a state-law question within ERB's exclusive jurisdiction." 2025 WL 2829559, at *4. Here, Plaintiff's grievance challenged Defendant's decision under the following sections of the CBA: Article 1 (Non-Discrimination), Article 3 (Employee Rights), Article 11 (Sick Leave),[3] Article 16 (Other Leaves), and Article 21 (Grievance and Arbitration). Hiatt Decl. Ex. 3, at 1. The only overlap between the identified CBA violations and the claims at issue here are the alleged breaches of Articles 1 and 16. But Article 1, as discussed above, specifically exempts statutory claims of discrimination from claims for breach of the CBA. *See*

[2] Defendant does not argue that Plaintiff alleges any other ULPs beyond breach of the CBA. *See* Def.'s Mot. Dismiss 5–14.

[3] The Court notes that Article 15 addresses sick leave and Article 11 covers vacation. *See* Hiatt Decl. Ex. 1, Arts. 11, 15.

*supra*. And Article 16 merely states that the City agrees to abide by the FMLA as set out in City policy. Hiatt Decl. Ex. 1, Art. 16, § 5 ("Family Medical Leave: The City agrees to abide by the applicable provisions of state or federal law regarding family medical leave, as set forth in City policy."). The Court declines to find that this section renders any alleged FMLA violation into a breach of the CBA. As the gravamen of Plaintiff's claims is not breach of the CBA, the Court finds that this case is not within the exclusive jurisdiction of the Oregon ERB.

## II. Notice of Plaintiff's Tort Claim Under Oregon Law

Defendant argues that Plaintiff did not give it "notice of his state law claims within the 180-day period" required under Oregon law. Def.'s Mot. Dismiss 16. Defendant argues that its June 25, 2025 letter informing Plaintiff it was "considering terminating [his] employment" demonstrates that Plaintiff should have known that "he had a possible tort claim against the city" on that date. *Id.* at 16–17. Because Plaintiff's February 4, 2026 notice was more than 180 days from this letter, Defendant argues that Plaintiff's claims are untimely. *Id.* at 18.

The Oregon Tort Claims Act requires a plaintiff to give "[n]otice of claim . . . within 180 days after the alleged loss or injury." ORS 30.275(2)(b). "The notice period does not begin to run 'until plaintiff has a reasonable opportunity to discover his injury and the identity of the party responsible for that injury.'" *Kutz v. Lee*, 291 Or. App. 470, 479, 422 P.3d 362 (2017) (quoting *Adams v. Or. State Police*, 289 Or. 233, 239, 611 P.2d 1153 (1980)). A plaintiff's failure to appreciate the full extent of their harm "is not sufficient to save [their] claim from the running of the notice period." *Dunn v. City of Milwaukie*, 270 Or. App. 478, 488, 348 P.3d 301 (2015). But "[a] court cannot decide [when the notice period begins to run] as a matter of law unless the only conclusion that a reasonable trier of fact could reach is that the plaintiff knew or should have

known the critical facts at a specified time." *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 332–33, 297 P.3d 1287 (2013).

The Court declines to find that Plaintiff should have discovered his injury on June 25, 2025. As Plaintiff points out, the June 25, 2025 letter was a "Notice of Proposed Administrative Separation" that informed Plaintiff that Defendant was "considering terminating [his] employment." Hiatt Decl. Ex. 2, at 1. The letter further explained why Defendant could not accommodate Plaintiff's recent requests and provided Plaintiff an opportunity to submit "additional information" for Defendant to consider in making its ultimate decision. *Id.* at 1–2. In other words, Defendant was still considering Plaintiff's accommodation and leave requests such that Plaintiff's claims for failure to accommodate, disability-rights retaliation/interference, and age discrimination had not accrued under Oregon law. *See* Compl., Fourth Claim for Relief ("Defendant refused to make reasonable accommodations for Plaintiff's disability and discharged Plaintiff because of his disability."), Fifth Claim for Relief ("Defendant used Plaintiff's protected accommodation requests . . . as part of the paper record supporting administrative separation, rather than as a part of a good-faith process to keep Plaintiff employed."), Sixth Claim for Relief ("Defendant . . . discharged Plaintiff in part because of age."). The Court therefore declines to find that the entirety of Plaintiff's state law claims accrued on June 25, 2025.

///

///

///

///

///

## CONCLUSION

The Court DENIES Defendant's Motion to Dismiss [7].

IT IS SO ORDERED.

DATED this 5th day of November, 2026.

AMY M. BAGGIO
United States District Judge